UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH FRANCIS NOONE IV, | ) | |
| JOSEPH CHARLES NOONE, | ) | |
| DUSTIN MICHAEL NOONE, and | ) | |
| CHRISTOPHER PATRICK NOONE, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-30206-MAP |
| | ) | |
| THE TOWN OF PALMER, | ) | |
| MASSACHUSETTS LAND COURT, | ) | |
| CHARLES T. BLANCHARD, BEVERLY | ) | |
| MORIN-LIZAK, LAWRENCE M. | ) | |
| JASAK, MICHAEL H. BURNS, PAUL | ) | |
| NOWICKI, DEBORAH J. PATTERSON, | ) | |
| and PETER A. BROWN, | ) | |
| | ) | |
| Defendants | ) | |

REPORT AND RECOMMENDATION WITH REGARD
TO DEFENDANTS' MOTIONS TO DISMISS
(Document Nos. 23, 27, 43, 44, and 45)
February 3, 2014

NEIMAN, U.S.M.J.

Proceeding *pro se*, Joseph Francis Noone IV, as executor of the estate of

Joseph Francis Noone III ("Spud Noone"), and Joseph Charles Noone, Dustin Michael

Noone and Christopher Patrick Noone, as heirs of Spud Noone (together, "Plaintiffs"),

bring this action, which arises out of a tax title foreclosure in Massachusetts Land Court.

Named as defendants are the Town of Palmer; the Massachusetts Land Court; Charles

T. Blanchard, the Town Manager of Palmer; Beverly Morin-Lizak, Lawrence M. Jasak,

Michael H. Burns, and Paul Nowicki, Palmer Tax Assessors; Deborah J. Patterson, the

Recorder of the Massachusetts Land Court; and Peter A. Brown, an attorney with

D'Ambrisio Brown, LLP, who represented the Town of Palmer during the Land Court proceedings.

Plaintiffs' claims stem from their assertion that Spud Noone held a "land patent" to his property.  As a result, according to Plaintiffs, no municipal real estate taxes were due on the property and the Massachusetts Land Court lacked jurisdiction over the tax title foreclosure case.  In particular, Plaintiffs assert the following claims in their second amended complaint: "conspiracy against rights to property as contemplated by 42 U.S.C. § 1985" against all Defendants (Counts 1 through 9); "conspiracy to commit an act of extortion as contemplated by 42 U.S.C. § 1985" against all Defendants (Counts 10 through 18); "treason against the U.S. Constitution as contemplated by 18 U.S.C. § 2381" against Patterson (Count 19); "breach of trust as a public official" against Blanchard, Moriz-Lizak, Burns, Nowicki, Patterson, and Brown (Counts 20 through 25); "violation of civil rights as contemplated by M.G.L. ch. 268, § 37" against all Defendants (Counts 26 through 34); "attempted extortion as contemplated by M.G.L. ch. 265, § 25" against all Defendants (Counts 35 through 43); "constructive fraud and larceny by scheme as contemplated by M.G.L. ch. 266, § 20" against all Defendants (Counts 44 through 52); and "fraud on the court and perjury of attorney's oath" against Brown (Count 53).[1]

Defendants have filed motions to dismiss, which have been referred to this court

---

[1] The final claim is mistakenly listed as "Count 26" in the second amended complaint, but the court will refer to it as "Count 53."

for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following

reasons, the court will recommend that Defendants' motions be granted

I. B<small>ACKGROUND AND</small> P<small>ROCEDURAL</small> H<small>ISTORY</small>

The following facts come from Plaintiffs' second amended complaint, which also

refers to attachments to their first amended complaint. Accordingly, certain facts derive

from both documents. *See Tran-spec Truck Service, Inc. v. Caterpillar Inc.,* 524 F.3d.

315, 321 (1st. Cir. 2008) ("When . . . a complaint's factual allegations are expressly

linked to -- and admittedly dependent upon -- a document (the authenticity of which is

not challenged) that document effectively merges into the pleadings and the trial court

can review it in deciding a motion to dismiss under Rule 12(b)(6).") (quoting *Beddal v.

State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)); *Watterson v. Page,* 987

F.2d 1, 3 (1st Cir. 1993) (courts may also consider "official public records" at the motion

to dismiss stage). The facts and all reasonable inferences are stated in a light most

favorable to Plaintiffs as the parties opposing dismissal. *Young v. Lepone*, 305 F.3d 1,

8 (1st Cir. 2002).

In 1983, Spud Noone acquired, through a conveyance from his parents, a tract of

land in Palmer. (Plaintiffs' Second Amended Complaint ("Compl.") ¶¶ 1, 10, 12.) This

same tract, Plaintiffs assert, can be traced to an "English Crown Grant from the King of

Great Britain" to Thomas Little in 1733. (Id. ¶ 3.) "Through an unbroken chain of title

over a period of time," the tract "eventually became the private property of one Elaine B.

Stillwell," who conveyed it to Spud Noone's parents in 1970. (Id. ¶¶ 8-9.) Spud

Noone's deed to the property, Plaintiffs continue, "was recorded almost nine months after the grant of land to [him], without his knowledge and consent, and not within the customary 60-day period." (Id. ¶ 13.)  The recorded deed "served as the basis for tax assessment" of the tract.  (Id. ¶ 16.)  The English Crown Grant, however, constitutes a contract, or a "land patent," which makes the property "immune from taxation."  (Id. ¶¶ 22-23, 31, 33.)[2]

On July 19, 2011, the Town of Palmer, through Paul Nowicki, executed a tax taking of Spud Noone's property for failing to pay real estate taxes for fiscal year 1989. (Exhibit P (attached to Plaintiffs' Amended Complaint ("Amend Compl."))).)  *See generally* MASS. GEN. LAWS ch. 60, §§ 53 and 54.  On February 2, 2012, the Town of Palmer instituted a tax lien action against Spud Noone in the Massachusetts Land Court, seeking to foreclose all rights of redemption to the property.  (Exhibits Q and T (attached to Amend Compl.).)  *See generally* MASS. GEN. LAWS ch. 60, § 65.  During the ensuing proceedings before the Land Court, Spud Noone, who filed a Notice of Special Appearance indicating that he did not consent to the jurisdiction of the court, raised the land patent and jurisdictional issues "on several occasions, both during oral arguments and in written pleadings." (Compl. ¶¶ 39, 70; Exhibits J, Q, R, and S (attached to Amend Compl.).)

_____

[2] Plaintiffs also allege that the "contract" is protected by Article I, sec. 10 of the United States Constitution, Articles 5 and 9 of the Treaty of Paris of 1783 between the United States and Great Britain, and Article VI of the United States Constitution.  (Id. ¶¶ 22, 24, 33.)  Furthermore, Plaintiffs allege that, in light of these protections, the United States Supreme Court is the only court that would have jurisdiction over the validity of the land patent and whether the property is subject to taxation.  (Id. ¶ 34.)

On November 29, 2012, Spud Noone filed with the Land Court a "Notice of Removal to the United States District Court." (Compl. ¶ 58.)  That same day, he filed a complaint in this court seeking various injunctions.  (Doc. No. 1.)  On January 26, 2013, Spud Noone passed away.  (Doc. No. 7.)  Plaintiffs thereafter filed a Notice of Suggestion of Death and a motion for an extension of time to amend the complaint, substitute a party, and serve the defendants.  (Doc. Nos. 7 and 8.)  On March 18, 2013, the court granted Plaintiffs' motion and ordered them to file an amended complaint and to serve defendants by April 26, 2013.  (Electronic Order No. 9.)  Meanwhile, on March 22, 2013, the Massachusetts Land Court entered a judgment in the tax lien action in favor of the Town of Palmer.  (Compl. ¶ 71; Exhibit N (attached to Amend Compl.).)

On April 26, 2013, Plaintiffs filed an amended complaint in this action seeking, among other requests, an order from the court requiring Defendants to "explain" certain actions and compensatory and punitive damages.  (Doc. No. 10.)  On May 17, 2013, the Town of Palmer, Nowicki, Morin-Lizak, Blanchard, Jasak, and Burns ("Town Defendants"), as well as Brown, filed motions to dismiss, whereas Patterson and the Massachusetts Land Court ("Commonwealth Defendants") filed an assented-to motion for a more definite statement.  (Doc. Nos. 23, 26, 27.)  After this court granted the Commonwealth Defendants' motion for a more definite statement (Electronic Order No. 41), Plaintiffs filed a second amended complaint seeking compensatory and punitive damages as well as declaratory and injunctive relief.  (Doc. No. 42.)  The Town Defendants and Brown renewed their motions to dismiss, and the Commonwealth

Defendants filed their own motion to dismiss. (Doc. Nos. 43, 44, 45.)[5]

## II. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim

upon which relief may be granted, the court must accept the allegations in the complaint

as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*,

510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir.

1992).[6] Although "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'"

*Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010), the

Supreme Court made clear under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that

only a complaint that states a plausible claim for relief on its face will survive a motion to

dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The Court explained that

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] Plaintiffs filed oppositions to both the Town Defendants' and Brown's original motions to dismiss. (Doc. Nos. 30, 31.) Because these defendants simply renewed their original motions to dismiss in Document Nos. 43 and 44, and Plaintiffs did not file additional oppositions, the court will treat the oppositions as applying to the latter motions as well. Plaintiffs, however, failed to file an opposition to the Commonwealth Defendants' motion to dismiss.

[6] To the extent Defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the same standard of review applies. *See Cintron-Luna v. Roman-Bultron*, 668 F.Supp.2d 315, 316 (D.P.R. 2009) (citing *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)).

alleged."  *Id.* at 1949.  Still, a *pro se* plaintiff is "entitled to liberal construction of his

allegations, no matter how inartfully pled."  *Stern v. Haddad Dealerships of the*

*Berkshires, Inc.*, 477 F. Supp. 2d 318, 321 (D. Mass. 2007).

III.  DISCUSSION

Defendants seek dismissal of this action on a number of grounds.  Both the

Commonwealth Defendants and the Town Defendants argue that Plaintiffs' second

amended complaint fails to comply with Fed.R.Civ.P. 8, that Plaintiffs lack standing, and

that res judicata bars the action.  The Commonwealth Defendants also argue that the

action is barred by the *Rooker-Feldman* doctrine, that Eleventh Amendment state

sovereign immunity bars the claims against the Land Court and Patterson in her official

capacity, that Patterson is absolutely immune from liability in her individual capacity,

and that, as to the remaining claims, Plaintiffs fail to state a claim upon which relief may

be granted.  In addition, the Town Defendants argue that 28 U.S.C. § 1341 bars the

action and that the claims against Morin-Lizak should be dismissed because she never

received service of process.  Brown, for his part, "joins and adopts" the Town

Defendants' arguments and, in addition, argues that he is protected by an absolute

privilege from any liability arising out of statements made during the course of the Land

Court litigation.

The court will first address the *Rooker-Feldman* doctrine and standing, because

they represent possible jurisdictional infirmities, before concluding that the action should

be dismissed on comity and issue preclusion grounds.  Alternatively, the court will also

recommend dismissal for failure to state a claim upon which relief may be granted.

A. *Rooker-Feldman* Doctrine

The Commonwealth Defendants contend that Plaintiffs' second amended complaint essentially asks this court to review the validity of the Land Court judgment and that, as such, it is barred by the *Rooker-Feldman* doctrine. Although Plaintiffs failed to oppose the Commonwealth Defendants' motion, and this failure in and of itself provides sufficient grounds for dismissal, the *Rooker-Feldman* doctrine implicates a district court's subject matter jurisdiction, *Lance v. Coffman*, 549 U.S. 437, 439 n.* (2007), and could, if applicable, dispose of the case in its entirety. Moreover, federal courts generally must decide subject matter jurisdiction issues as a threshold matter, even if not directly raised by the parties. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (directing federal courts to first decide whether subject matter jurisdiction exists before addressing the merits); *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 (1st Cir. 2011) ("A court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte.").

At first glance, it would appear that the *Rooker-Feldman* doctrine bars this action. The doctrine provides that federal district courts have "no authority to review final judgments of a state court in judicial proceedings" because "[r]eview of such judgments may only be had in [the United States Supreme Court]" under 28 U.S.C. § 1257. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). All of the claims in the second amended complaint, as best the court can discern, stem from the assertion

that the Land Court incorrectly decided the "land patent" issue and improperly asserted

jurisdiction over the tax lien action, thereby causing injury, along with the other

Defendants, to Plaintiffs.  "[I]n essence," therefore, Plaintiffs seek review and rejection

of the Land Court judgment.  *Feldman*, 460 U.S. at 482 n. 16.[7]

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005),

however, the Supreme Court limited the reach of the *Rooker-Feldman* doctrine to

"cases brought by state-court losers complaining of injuries caused by state-court

judgments *rendered before the district court proceedings commenced* and inviting

district court review and rejection of those judgments."  *Id.* at 283 (emphasis added).

The Court explicitly held that, if the federal action commenced prior to the state-court

judgment, *Rooker-Feldman* does "not emerge to vanquish jurisdiction" after the state-

court judgment issues.  *Id.* at 294; *see also id.* at 292 ("When there is parallel state and

federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in

state court. . . . [N]either *Rooker* nor *Feldman* supports the notion that properly invoked

concurrent jurisdiction vanishes if a state court reaches judgment on the same or

---

[7] Although Plaintiffs themselves were not parties to the Land Court action, and *Rooker-Feldman* is generally "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding," *Lance v. Dennis*, 546 U.S. 459, 464 (2006), the Supreme Court in *Lance* implied that the doctrine would apply, in a case like this, where the party in the underlying action died following the state-court judgment.  *See id.* at 466 n. 2 ("In holding that *Rooker-Feldman* does not bar the plaintiffs here from proceeding, we need not address whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not name in an earlier state proceeding – *e.g.*, where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent.").  The court believes that this case is one of those limited circumstances in which *Rooker-Feldman*, if otherwise available, can apply despite the lack of strict identity between the parties.

related question while the case remains *sub judice* in federal court.") (internal citations

omitted)). Here, Spud Noone commenced this action on November 29, 2012, and the

Land Court did not enter its judgment until March 22, 2013.

Arguably, though, *Rooker-Feldman* may still apply because the second amended

complaint, which is the operative complaint at this time, was filed after the Land Court

judgment and constitutes a facial attack on that judgment. Were that interpretation of

the law to hold sway, the *Rooker-Feldman* doctrine would likely bar this matter from

proceeding any further against Defendants for lack of subject matter jurisdiction.

The court, however, need not answer the *Rooker-Feldman* question as a

threshold matter because other issues are clearly dispositive, as discussed below.

Indeed, the First Circuit recognizes an exception to *Steel Co.*'s strict "order of

operations" rule when "prior case law 'foreordains' the outcome on the merits, so as to

deny recovery." *Seale v. I.N.S.*, 323 F.3d 150, 157 (1st Cir. 2003); *see also Chun Xin*

*Chi v. Holder*, 606 F.3d 6, 9 (1st Cir. 2010) ("Given that courts can bypass a close

jurisdictional question if the merits ruling is 'foreordained' and does not create new

precedent . . . we leave the issue for another day and turn to the merits.") (internal

citation omitted)). Moreover, as the District of Columbia Circuit explained, "certain non-

merits, nonjurisdictional issues may be addressed" before subject matter jurisdiction

issues if the nonjurisdictional rule of dismissal is "designed not merely to defeat the

asserted claims, but to preclude judicial inquiry." *Public Citizen v. U.S. Dist. Court for*

*Dist. of Columbia*, 486 F.3d 1342, 1347-48 (D.C. Cir. 2007) (citing *Sinochem Int'l Co. v.*

*Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007);*Tenet v. Doe*, 544 U.S. 1, 6 n.4

(2005)).  In the court's view, the comity and issue preclusion grounds discussed below

represent such "non-merits, nonjurisdictional" rules of dismissal which may precede

resolution of subject matter jurisdiction questions.  *Cf Torromeo v. Town of Fremont*,

438 F.3d 113, 115 (1st Cir. 2006) ("Because we agree that Plaintiffs' Fifth Amendment

claim is res judicata, we bypass the *Rooker-Feldman* issue and proceed to the district

court's alternative ruling.").[8]

B. Standing

Defendants assert that Plaintiffs lack standing to pursue the instant action

because they failed to provide evidence that Joseph Francis Noone IV is the executor of

Spud Noone's estate and that the other plaintiffs are heirs.  Accordingly, Defendants

contend that subject matter jurisdiction is wanting for lack of standing.  The court is not

entirely persuaded.

First, while Defendants are correct that Plaintiffs have not provided evidence to

substantiate their interest in the controversy, they have alleged that Joseph Francis

Noone IV is the executor of Spud Noone's estate and that the other plaintiffs are his

heirs.  Defendants fail to cite any authority which stands for the proposition that Plaintiffs

must prove, rather than merely allege, such interest.  *See, e.g.*, *Pomeroy v.*

---

[8] In addition, some courts hold that "*Rooker-Feldman* is a rule of *statutory* jurisdiction, not Article III, so *Steel Co.* does not directly apply."  *In re Athens/ Alpha Gas Corp.*, 715 F.3d 230, 235 (8th Cir. 2013); *see also Seale*, 323 F.3d at 155-57 (discussing without resolving whether the *Steel Co.* rule applies to statutory jurisdictional issues).

*Ashburnham Westminister Reg'l School Dist.*, 410 F.Supp.2d 7, 9 (D.Mass. 2006).

Second, to the extent the Town Defendants argue that only Joseph Francis Noone IV as executor may maintain this action, the court concludes that this question is more properly viewed as an issue of capacity rather than Article III standing.  *See Hill v. Martinez*, 87 F.Supp.2d 1115, 1122-23 (D.Colo. 2000).  Clearly, as Spud Noone's heirs, Joseph Charles Noone, Dustin Michael Noone and Christopher Patrick Noone have the requisite "personal stake in the outcome of the controversy" for standing purposes. *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63, 67-68 (1st Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  For purposes of Fed.R.Civ.P. 17(b), however, only Joseph Francis Noone IV has the capacity to represent Spud Noone's estate in this action.  *See, e.g., Nordberg v. Town of Charlton*, 2012 WL 2990763, at *3 (D.Mass. July 19, 2012).  But that is not an issue of subject matter jurisdiction.

Third, to the extent the Town Defendants also argue that none of the claims survived the death of Spud Noone, the court rejects that assertion as well, at least as to the section 1985 claims.  *See Pomeroy*, 410 F.Supp.2d at 12-14 (holding that, pursuant to 42 U.S.C. § 1988(a), a § 1983 procedural due process claim is an "[a]ction[] of tort . . . for . . . damage to the person" for purposes of M.G.L. c. 228, § 1, the Massachusetts survival statute); *see also Wagar v. Hasenkrug*, 486 F.Supp. 47, 50 n.1 (D.Mont. 1980) ("[A] United States district court, under 42 U.S.C. s 1988, may refer to the law of the state in which it sits in order to determine whether an action under section 1983 (or sections 1985 and 1986) for injury to the person survives.") (quoting *Hall v. Wooten*, 506

F.2d 564, 566 (6th Cir. 1974)).  Given all this, the court will move on to the comity and

issue preclusion grounds which it believes do dispose of the entire action.

C.  Comity and 28 U.S.C. § 1341

The Town Defendants argue that because, at bottom, Plaintiffs challenge the

validity of the real estate taxes imposed on Spud Noone's property and collected

through the tax title action, this action should be dismissed pursuant to 28 U.S.C. §

1341.  That statute provides that "[t]he district courts shall not enjoin, suspend or

restrain the assessment, levy or collection of any tax under State law where a plain,

speedy and efficient remedy may be had in the courts of such State."[9]  As the statute

only speaks in terms of "enjo[ing], suspend[ing], or restrain[ing]," it seemingly only

prohibits injunctions and, thus, would only apply to that portion of the second amended

complaint which seeks an order "that the Defendants immediately cease and desist

from any further actions to take Plaintiffs' land under color of state law."  (Compl. *Ad

Damnum* No. 31.)

Nevertheless, the Supreme Court, relying on the same "fundamental principle of

comity between federal courts and state governments" reflected in section 1341 and

prior case law, has held that federal courts may not entertain section 1983 damages

actions or render declaratory judgments which depend on challenges to the validity of

state tax systems.  *See Fair Assessment in Real Estate Ass'n. v. McNary*, 454 U.S.

---

[9] "State taxation, for § 1341 purposes, includes local taxation" because "[l]ocal taxes are imposed under authority of state law."  *Hibbs v. Winn*, 542 U.S. 88, 100 n.1 (2004) (internal quotation marks omitted).

100, 103, 116 (1981); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299

(1943).  Rather, the Supreme Court explained, "[s]uch taxpayers must seek protection

of their federal rights by state remedies, provided of course that those remedies are

plain, adequate, and complete, and may ultimately seek review of the state decisions in

[the Supreme Court]."[10]  *Fair Assessment*, 454 U.S. at 116.  The Court reasoned that,

just as a federal court must decide that enforcement of the applicable state tax is

unconstitutional in the declaratory judgment context, which the Court prohibited in *Great*

*Lakes*, so too must such a determination be made in the context of a damages suit

under section 1983.  *Id.* at 113-14.  In both situations, the Court explained, the federal

action would unduly interfere with the state tax system.  *Id.* at 111-15.

Here, all of Plaintiffs' claims depend on a determination that the imposition and

enforcement of the real estate tax was unconstitutional in light of Plaintiffs' "land patent"

argument.  *See, e.g.*, *Gibson v. Gains*, 2006 WL 858336, at *3 (11th Cir. April 4, 2006)

(unpublished) ("The same reasoning also extends to [the plaintiff's] claim for damages

under 42 U.S.C. § 1985 because the claim depends on an initial determination of the

constitutionality of the state tax system and therefore the district court correctly declined

to entertain that claim as well.").  Moreover, Plaintiffs have not indicated that state

procedures fail to provide an adequate remedy for the "protection of their federal rights."

---

[10] The Supreme Court in *Fair Assessment* explained that it "discern[ed] no
significant difference, for purposes of the principles recognized in this case, between
remedies which are 'plain, adequate, and complete,' as that phrase has been used in
articulating the doctrine of equitable restraint, and those which are 'plain, speedy and
efficient, within the meaning of § 1341."  *Id.* at 116 n.8.

*Id.* at 116.  Rather, Plaintiffs merely allege that the Land Court rejected their

constitutional arguments and that such issues could only be addressed in the United

State Supreme Court, a proposition which this court rejects.  *See Burt v. Titlow*, 134

S.Ct. 10, 15 (2013) ("'[S]tate courts have the solemn responsibility equally with the

federal courts to safeguard constitutional rights,' and this Court has refused to sanction

any decision that would 'reflec[t] negatively upon [a] state court's ability to do so.'")

(quoting *Trainor v. Hernandez*, 431 U.S. 434, 443 (1977)).  Quite to the contrary, this

court finds that state procedure *does* provide adequate remedies.  *See Streeter v. City*

*of Worcester*, 146 N.E.2d 514, 517 (Mass. 1957) ("The Land Court had jurisdiction over

the cause of action, to wit, whether the city was entitled to a decree of foreclosure by

force of its tax title. . . .  If, as the plaintiff now contends, the court came to the wrong

conclusion in the foreclosure proceeding, [the plaintiff] had the right to bring the case [to

the Supreme Judicial Court] by an appeal or by exceptions.");  *see also Ludwin v. City of*

*Cambridge*, 592 F.2d 606, 609 (1st Cir. 1979) (holding that Massachusetts provides an

adequate remedy for challenging a real estate tax assessment).  Indeed, having raised

the claim in the Land Court, and having had the claim rejected, Plaintiffs were free to

pursue the claim on appeal.

      Accordingly, the court concludes that this action is barred based on the principles

of comity expressed in *Fair Assessment* and reflected in section 1341.

D.  Issue Preclusion

      The court also concludes that the instant action is barred on issue preclusion

grounds.  Pursuant to 28 U.S.C. § 1738, the Full Faith and Credit Act, federal courts

must "give the same preclusive effect to a state-court judgement as another court of the

State would give."  *Exxon Mobil Corp.*, 544 U.S. at 293 (quoting *Parsons Steel, Inc. v.*

*First Alabama Bank*, 474 U.S. 518, 523 (1986)).  Accordingly, this court must look to

Massachusetts law in determining whether issue preclusion, also known as collateral

estoppel, applies.  "Issue preclusion prevents the relitigation of an issue determined in

an earlier action when that issue subsequently arises in another action based on a

different claim between the same parties or their privies."  *Jarosz v. Palmer*, 766 N.E.2d

482, 487 n.3 (Mass. 2002).  Under Massachusetts law, issue preclusion applies if

> (1) there was a final judgment on the merits in the prior adjudication; (2) the
> party against whom issue preclusion is asserted was a party (or in privity with
> a party) to the prior adjudication; and (3) the issue in the prior was identical
> to the issue in the current adjudication. . . .  Additionally, the issue decided
> in the prior adjudication must been essential to the earlier judgment.

*Korbin v. Bd. of Registration of Medicine*, 832 N.E.2d 628, 634 (Mass. 2005) (internal

citation and quotation marks omitted).

These requirements have been met here.  In the tax lien action, the

Massachusetts Land Court entered a final judgment foreclosing all rights of redemption.

(Exhibit N (attached to Amend Compl.).)  It is unclear whether Plaintiffs appealed that

judgment, but, even if they have, the Supreme Judicial Court has held that a lower court

judgment is considered final for issue preclusion purposes while it is on appeal.  *O'Brien*

*v. Hanover Ins. Co.*, 692 N.E.2d 39, 44 (Mass. 1998).  Moreover, Plaintiffs are clearly in

privity with Spud Noone.  The same "land patent" argument which forms the basis of all

of Plaintiffs' claims in this action was raised by Spud Noone on multiple occasions in the

Land Court, albeit rejected. (Exhibits J, Q, R, and S (attache to Amend Compl.).) If

anything, that issue was essential to the Land Court judgment because, if it had found

that Spud Noone's argument constituted a valid defense, it could not have entered

judgment in favor of the Town of Palmer.

Accordingly, the court also recommends that this action be dismissed because of

issue preclusion.

E. Failure to State a Claim

As an alternative basis for dismissal, and so as to provide a more complete

report and recommendation, the court concludes as well that Plaintiffs have failed to

state a claim upon which relief may be granted. Briefly, Plaintiffs, with respect to their

section 1985 claims, have failed to sufficiently allege facts which indicate that

Defendants engaged in a conspiracy; neither have they alleged "a class-based,

invidiously discriminatory animus." *See Knowlton v. Shaw*, 704 F.3d 1, 11 (1st Cir.

2013); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Moreover, 18 U.S.C. § 2381;

M.G.L. c. 265, § 25; M.G.L. ch. 266, § 20; and M.G.L. c. 268, § 37 are all criminal

statutes which do not provide a private right of action.[11] And Massachusetts does not

recognize a claim for "breach of trust as a public official." Finally, the court agrees with

Brown that Count 53 fails because he is protected by absolute privilege. *See, e.g., Doe

v. Nutter, McClennen & Fish*, 668 N.E.2d 1329, 1332-33 (Mass.App.Ct. 1996) ("[T]he

---

[11] In fact, M.G.L. c. 268, § 37 was repealed in 1962.

privilege which attaches to statements made by an attorney in the institution or conduct

of litigation or in conferences and other communications preliminary to litigation . . . .

provides a complete defense even if the offensive statements are uttered maliciously or

in bad faith." (internal citations and quotation marks omitted)).

IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motions to

dismiss be ALLOWED.[12]

DATED: February 3, 2014

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[12] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.